IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | |
|---|---|
| SELENA CAPERS, | * |
| | * |
| Plaintiff, | * |
| | * |
| vs. | *   No. 4:14CV00692 SWW |
| | * |
| NATIONAL RAILROAD PASSENGER | * |
| CORPORATION a/k/a AMTRAK, a | * |
| Congressionally Incorporated Corporation, | * |
| | * |
| Defendant. | * |

**Opinion and Order**

Plaintiff Selena Capers ("Capers") filed this action against National Railroad Passenger Corporation ("Amtrak") alleging Amtrak was negligent in failing to protect her from an assault by one of its employees while she was a passenger on an Amtrak train. Now before the Court is Amtrak's motion for summary judgment to which Capers responded. Amtrak filed a reply to the response. For the reasons stated below, the motion is granted.

**I.**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). As a prerequisite to summary judgment, a moving party must demonstrate "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has properly supported its motion for summary judgment, the non-moving party must "do more than simply show there is some metaphysical doubt as to the

material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). An issue of fact is material only if it could affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). When a non-moving party cannot make an adequate showing on a necessary element of the case on which that party bears the burden of proof, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322-23.

## II.

The following facts, taken from Amtrak's statement pursuant to Local Rule 56.1, are deemed admitted for the purpose of summary judgment review.[1] Selena Capers was a passenger on Amtrak's Texas Eagle train on December 6-7, 2011. She boarded the train in San Antonio. Texas, with a final destination of Chicago, Illinois. She testified that shortly after boarding, she met and briefly chatted with Lonnie Sanders, an Amtrak porter. Later on, Sanders offered Capers an upgrade to a room in the sleeper car, at no extra charge. She accepted, and Sanders moved Capers and her bags to the sleeper room. Throughout the day, she continued to interact with Sanders: she testified he brought her a menu and took her food orders; collected her dirty dishes; and checked on her. He did not enter her room. Capers testified that later, Sanders moved her to a different sleeper room across the hall, where she ate lunch and took a nap. After waking up, Capers told Sanders she wanted to go eat with other people, and Sanders brought her a ticket for the diner car. Capers left her room, stopped in the upper-level observation deck in

---

[1] Local Rule 56.1 provides that a party moving for summary judgment must submit a statement of the material facts as to which it contends there is no genuine issue to be tried, and the non-moving party must file a responsive statement of the material facts as to which it contends a genuine issue exists to be tried. "All material facts set firth in the statement filed by the moving party . . . shall be deemed admitted unless controverted by the statement filed by the non-moving party . . ." Local Rule 56.1(c).

the lounge car, and then went to the diner car, where she socialized and ate with another couple.

Ms. Capers testified that at some point, Sanders came into the diner car and gave Capers a note, saying he had moved her to a different room in the sleeper car. After Capers arrived in the new room, Sanders made up the bed and performed routine turndown services. Ms. Capers said that Sanders returned with a pair of shrink-wrapped pajamas and offered them to her. She took them. Ms. Capers testified Sanders returned later, knocked on her door, and had two bottles of wine. He poured wine into two small glasses and they toasted their new friendship. The door was open during this interaction, which lasted a few minutes. Ms. Capers said she took a sip of wine, told Sanders she was going to sleep, and asked him to turn off the lights and shut the door on his way out.

Ms. Capers alleges that she woke up around 1:00 a.m. with Sanders lying next to her in bed, touching her legs and buttocks while "grinding his pelvis on [her] butt." She said she did not see his face but recognized Sanders's voice. In addition, he called her by her name. Ms. Capers got out of the bed, located her purse, and when she heard Sanders lie back down on the bed, she grabbed her purse and the glass of wine sitting next to it, popped the lock on the door, and ran out.

She reported the incident to Curtis Jackson, the train's conductor, who had Capers write a statement. Mr. Jackson moved Capers to a room in a different car. After Sanders was located, he was relieved from service and told to detrain at the next station stop. He detrained in St. Louis, and Capers continued on the trip until she reached Chicago. Ms. Capers alleges she suffers from PTSD and depression as a result of the incident with Sanders.

At the time of the alleged incident, Sanders had been an Amtrak on-board service

3

attendant for eleven years. Before hiring Sanders, Amtrak engaged a third-party company to conduct a background check, which revealed nothing negative. In 2010 and 2011, Sanders received training on Amtrak's Anti-Discrimination and Anti-Harassment Policy. Mr. Sanders's manager at the time of the alleged incident, Jonathan Lombardi, never received any complaints or negative comments about Sanders. His work record before the alleged incident was spotless. His personnel file includes two letters of commendation for excellent service from Amtrak management, and another letter from one of Sanders's former managers, relating a compliment the manager had received from customers about Sanders's service. Mr. Sanders's personnel file contains no disciplinary records, negative performance reviews, or negative comments.

### III.

Ms. Capers asserts Amtrak was negligent in that it had inadequate policies and procedures in place to prevent foreseeable danger to passengers such as herself.[2] She argues that Amtrak should have had a policy in place for when a coach passenger is missing from his or her seat for an extended period of time. She contends such an absence would raise a suspicion, which should be reported to the conductor. Ms. Capers also alleges Amtrak had no policy or procedure in place to check on the safety and security of passengers in the rear sleeper cars, giving a single employee sole responsibility for access to and control over those cars. While Amtrak policy and practice is for the conductor to walk through the entire train approximately every thirty minutes, there is no requirement that the conductor check to make sure rooms that are supposed to be unoccupied are not being used.

---

[2]Plaintiff withdraws her claims of negligent retention and negligent supervision. *See* Pl's. Br. in Opp'n to Def's. Mot. Summ. J. at n.7.

Arkansas law imposes on Amtrak a duty to exercise "the highest degree of care consistent with . . . the practical operation of its business." AMI 1701. *See also Yellow Cab Co. v. Dossett*, 426 S.W.2d 792, 794 (Ark. 1968). Amtrak "is not an absolute insurer of the safety of its passengers. It is only required to exercise towards its passengers the highest degree of care which a prudent and cautious man would exercise and that which is reasonably consistent with the mode of conveyance and practical operation of its trains." *Capital Transp. Co. v. Howard*, 229 S.W.2d 998, 1000 (Ark. 1950)(internal quotation and citation omitted).

> 'To constitute negligence, an act must be one from which a reasonably careful person would foresee such an appreciable risk of harm to others as to cause him not to do the act, or to do it in a more careful manner.' Foreseeability is thus a necessary ingredient of actionable negligence in this state. 'Conduct becomes negligent only as it gives rise to appreciable risk of injury to others, and there is no negligence in not guarding against a danger which there is no reason to anticipate.' In other words, 'negligence cannot be predicated on a failure to anticipate the unforeseen.'

*Ethyl Corp. v. Johnson*, 49 S.W.3d 644, 648 (Ark. 2001)(internal citations omitted).

Because the claimed attack was not foreseeable, Amtrak argues it cannot be held liable for failing to protect Capers. Ms. Capers admits that Amtrak had no reason to believe that Sanders would sexually assault a passenger. However, she argues it was foreseeable that a passenger who was missing for a significant amount of time from a coach car to which she had been assigned faced an appreciable risk of harm. She cites *Jordan v. Adams*, 533 S.W.2d 210 (Ark. 1976) in support of her assertion that the attack was foreseeable.

In that case, Jordan took his companion's purse and threw it across the room of a private club in which people were eating and drinking. The purse landed on a table where a couple were eating, breaking a glass candle holder. A .25 caliber pistol in the purse discharged upon impact with the floor, wounding a diner in the leg. A jury found Jordan and his companion negligent.

The Arkansas Supreme Court affirmed on appeal. The court held: "It is well established that if the act is one which the party in the exercise of ordinary care ought to have anticipated was likely to result in injury to others, then such person is liable for the injury proximately resulting therefrom although he might not have foreseen the particular injury which did happen. . . . Even if we assume that Jordan was unaware that Womack had a pistol in her purse, it was a culpably negligent act for him to throw a purse (large enough to hold a pistol and other things a woman carries therein) 26 feet across an area where people were dining and drinking." *Id*. at 212-13.

In support of her argument that there is an issue of fact for the jury as to foreseeability, Capers cites the testimony of Jackson, the conductor, who agreed "that at some point there would be a concern if a passenger has not appeared in their seat for a very long period of time."[3] He also agreed that it would be an option for train attendants to confer with each other to determine a missing passenger's whereabouts, and that if a train attendant were suspicious because a passenger was missing from her seat for an entire trip, the employee should check on the passenger or bring the concern to Jackson's attention.[4] Mr. Lombardi, Amtrak's corporate representative, agreed that an employee's failure to bring a concern that a passenger may be in danger would fall below the standard of care.[5] Ms. Capers asserts that because Amtrak did not have in place policies or procedures to locate "missing" passengers, monitor sleeper-car attendants like Sanders, and require the conductor, during his routine walk-throughs, to confirm that no one was in a sleeper-car room that was supposed to be unoccupied, it was foreseeable

---

[3]Pl's. App., Jackson Dep. (ECF No. 46-4) at 29-30 .

[4]*Id*. at 37-8.

[5]Pl's. App., Lombardi Dep. (ECF No. 46-7) at 10-11.

that an attack like hers would happen.

Unlike in *Jordan v. Adams*, where it is clear that someone likely would be injured when a purse is thrown across a room full of people, it does not follow that the absence of the three suggested policies likely would result in an assault or other injury to a passenger at the hands of an employee. As Capers concedes, Amtrak had no reason to believe that Sanders would sexually assault a passenger.[6] In addition to arguing the alleged assault on Capers was unforeseeable, Amtrak argues there is no evidence that her assault was foreseeable because she did not remain in her coach seat. There is no evidence she was "missing." The evidence reflects Capers freely moved about the train and, as train attendants Joshua Pryor and Timothy Bolhar testified, passengers move about the train and may not be in their seats for any number of reason.[7] The Court agrees that there is no evidence that Amtrak should have more closely monitored Sanders or that any failure to do so created a foreseeable risk of harm to Capers. Capers recognizes that Amtrak had a "no tolerance" sexual harassment and anti-discrimination policy in place and Sanders received training on policy in 2010 and 2011.[8]

Further, there is no evidence that the conductor's failure to double check unoccupied sleeper-cars created a foreseeable risk of harm to Capers. Mr. Jackson testified he boarded the train in Little Rock at around 11:39 p.m., when the sleeper-car attendant is on his or her mandatory downtime.[9] He said that if he encountered a room with the door closed and curtain

---

[6] Pl's. Br. in Opp'n to Def's. Mot. Summ. J. at 2, n.2, (ECF No. 44).

[7] *Id.*, Pryor Dep.(ECF No. 46-5) at 33-4; Bolhar Dep. (ECF No. 46-6) at 16-17, 20.

[8] Pl's. Br. in Opp'n. to Def's. Mot. Summ. J. at 11. See also Def's. Br. in Supp. Mot. Summ. J., Exs. 3 & 4 (ECF Nos. 43-3, 43-4).

[9] Def's. App., Ex. D (Jackson Dep.) at 11, 91 (ECF No. 46-4).

drawn, the only way he could tell if it were unoccupied would be to knock on and open the door. He did not do that because he did not want to disturb passengers in the middle of the night.[10] He explained there are a number of reasons why a room might be listed as unoccupied on his manifest but legitimately have passengers in it.[11] Lastly, Amtrak argues that even if the policies Capers suggest were in place, there is no evidence that they would have prevented the alleged attack.

The Court finds Capers has no evidence from which a reasonable jury could find that the alleged assault was foreseeable or that the lack of certain policies was the proximate cause of her alleged harm.

**IV.**

IT IS THEREFORE ORDERED that defendant's motion for summary judgment [ECF No. 41] is granted. Plaintiff's claim is dismissed. A separate judgment will be entered.

DATED this 29th day of December, 2015.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE

---

[10] *Id.* at 92-93, 97-97.

[11] *Id.* at 92.